Good morning everyone and welcome to the Ninth Circuit. We have one matter on calendar today and counsel I see you have approached. Go ahead if you want to reserve time that's fine just mind the clock if you do so. Thank you your honor and may it please the court. My name is Elizabeth Daly. I'm here on behalf of the appellant Tony Klein and I do plan to reserve five minutes for rebuttal. Very well. This was a close case. The government's allegations of abuse were not supported by any video surveillance, physical or forensic evidence and the defendant not only had no criminal record but had passed two independent polygraph examinations categorically denying any wrongdoing. And I take it that evidence was not presented to the jury? No your honor that evidence was inadmissible but it's part of the context that this court can consider. And asking us to consider evidence that was not admitted below as part of the record? Not for purposes of harmless error of course. The harmless error determination is made on the basis of the trial evidence. However it's part of the overall context that this court should know about. So this was a he said she said case but there were 21 she saids? That's correct. There were 17 who ended up testifying at trial. Okay. But these circumstances I raise carry that any error in this case carry the very real risk that an innocent man was sent to prison. This appeal challenges four rulings that each independently warrant reversal and that cumulatively render the trial trial fundamentally unfair. I plan to address each of the issues in the order presented if the court wishes to redirect me of course I'm happy to do that. First the testimony about Cameron's Basler Cameron Basler's recruitment of other inmates to lie about Mr. Klein was relevant and admissible and it should not have been excluded. The basic test for relevance is met here because the key question at trial was whether the complainant's reasons for making allegations were because they had in fact been subjected to sexual abuse or was it because they had joined a scheme that was being propagated at Coffee Creek to lie specifically about Mr. Klein. The fact that Basler was advertising this false claim scheme that she was recruiting inmates to join join it and explaining all of the reasons that they should do that. Ms. Daly the problem I'm having with the argument is that as I understood the the proffer hearing outside the presence of the jury you did not have an out-of-court witness who could testify to actual attempted recruitment of one of the victims in the case is that correct? It was another inmate talking to a witness who said that's correct with respect exception of AV 15 was testified to be part of the scheme with Basler. And AV 15 was that one of the counts that was dismissed before trial? AV 15 was an uncharged complainant so it wasn't dismissed she testified about abuse but her claims were never charged. So how did the district court err as a matter of evidence law in excluding what is clearly hearsay an out-of-court statement offered to prove the truth of the existence of a conspiracy to frame your claim? Sure and I think those are two a relevance question and a hearsay question so I want to address them in those first the relevance. You would under an abusive discretion standard correct? Well I think relevance is a question of law and the district court got the relevance wrong here. Under 403 and 404B balancing you think that's a legal question? Under 401 and 402 that's a legal question and the court made a legal ruling about relevance before it made the 403 balancing. That pretty heavily fact dependent though on on the scales of justice the the facts would drive the analysis as to this court's I'm sorry I didn't mean to interrupt this court's opinion and evidence would indicate that it's de novo review of relevance and that when a 403 balancing test is conducted based on a mistaken perception as to relevance then there's no deference to that opinion. But I'd like to address why we don't I mean the government's point is we have to have direct evidence. Some witness who says yes Basler's recruitment went to this complainant this court treats direct evidence and circumstantial evidence equally and the jury here was instructed on that and what we do have is actually very powerful and explicit testimony about the way that information was shared at Coffee Creek and so it's not just the common sense that if you have this type of encouragement to do something in a group environment that people are more likely to even if you don't have that direct link but we also have for example AV7 testified that people were talking about Klein and when she was asked well was everybody talking she said if you start a small rumor at a coffee shop and it goes around a small tiny town the rumor is going to go around regardless. But that's the whole purpose of the hearsay rule is to exclude that kind of post office testimony. It would be hearsay if it was offered for the truth of Cameron Basler's statement that she planned to lie but Cameron Basler's credibility is not at issue. The question is were those statements made? The critical issue here is the recruitment. Whether Cameron was just blowing smoke doesn't matter. The question is did she say these things to Ms. Beaver because that's what propagates this joint scheme. It's not a situation where we're saying that the jury had to believe that false claims were being made by Ms. Basler in order for the jury to accept Ms. Beaver's testimony that she was trying to get other people to make false claims. But you're asking the jury to make the assumption that she actually did contact the other victims in an attempt to recruit them and as I understand it that's an inference that you think the jury could have drawn from this circumstantial evidence. Right and I think again I think that's jumping back to relevance. The hearsay is answered 100 percent. Struggling with trying to figure out because you don't have a more direct causal connection to the actual victims of the crime here. I'm struggling as to why the district court erred after listening to the proffer in ruling that it was excludable. Sure and I think it's because the district court discounted the reasonable inferences that could be drawn. So not only do we have these very explicit for example AV-17 talked about specifically rumors about Basler and Klein and she says they get around pretty quickly to everyone. And then we know that these particular women were connected to Basler. Eight of the 17 complainants knew Basler including AV-6 who was her bunkie in minimum. AV-17 who grew up with Basler and importantly AV-8 and AV-9 whose claims both resulted in acquittal had named Basler in connection with these offenses. So AV-8 had said she was referred to an attorney by Basler and AV-9 was said that Basler was a witness to her abuse. And so the government chose not to bring this witness who was apparently in the room when AV-9 was claimed that these events happened. The jury acquitted on that. Had it known about Basler's attempts to recruit inmates and this very close connection to AV-9, AV-8 and as we've described in our brief this sort of web of connections that's expand from there. This was a very small cohort of individuals who brought these even though the evidence was that Mr. Klein provided equal care to all 1,000 inmates at Coffee Creek. The jury can draw inferences from those connections that I think the district court discounted in its relevance analysis. I take it the argument was made during closing argument by the defense. The argument was made but it doesn't substitute for evidence and I think it fell flat because there were powerpoint slides about connections to Basler but we didn't have the We didn't have Basler saying I'm recruiting people. We didn't have Ms. Beaver saying this is what Cameron Basler was doing in custody. I'm rounding up people to lie about Mr. Klein. I think that's powerful evidence. It's not offered for its truth. But you did have a substantial amount of impeachment evidence, did you not, that you explored through cross-examination of the government's witnesses? I think that's correct that this was a very close case and any bit of extra defense evidence that should have been admitted can't be deemed harmless. I guess the question becomes at what point is the district court abusing its discretion when it draws the line and limits cross-examination to what the district court determined was irrelevant testimony? And this was about defense evidence, not about cross-examination and so... No, no, no. I understand that but the district court, this is not a case where the district court excluded the defense from introducing any evidence of impeachment as to all these other witnesses. What the defense, what was precluded was the only evidence the defense had available about collusion. There was other testimony about, for example, individual bad actors who had decided to, you know, make false claims because they wanted money. Right. And so we had that. But what we didn't have was exactly what the government monopolized was saying, but they weren't working together. They were just individual. You had evidence that some of the victim witnesses had been convicted of crimes involving... They had all been convicted of crimes. But some of them, I assume, maybe were fraud or... Many, many identity theft convictions. Identity theft, okay. That's correct. And the jury heard all that. The jury did, but what they didn't hear was that somebody was recruiting inmates to lie about Mr. Klein. That was completely excluded. And the sanitized testimony about AV-15 that came into trial was a little bit misguiding in that sense because the way it came out was not that AV-15 and Ms. Basler were working together. It was that AV-15 independently made false allegations, that she wanted to make false allegations because she was suing ODOC. But the jury never heard that she was working with Cameron Basler and that Cameron Basler was trying to get other people involved. It was the how. It was the why. How do we make these claims? How do we make them more believable? And, you know, to the point that she's saying we could fabricate DNA evidence. They're suggesting, they're talking about ways to make this work amongst themselves. And it was reported contemporaneously to Nurse Gina Melisse. If the court doesn't have questions, I can move on to the second issue, which I think goes hand in hand because it's another exclusion of defense evidence. When we look at harmless error, we look at it cumulatively. And the testimony that Mr. Klein was not flirtatious with inmates should have been admitted because it was proper rebuttal. The government's argument on this point, I think, rests on a misunderstanding of the type of evidence that was being rebutted. The government's arguments go to specific instances of alleged sexual misconduct. But that's not all that they elicited in their case in chief. They specifically brought out testimony about Mr. Klein's interactions with inmates in general, his demeanor with inmates. And that testimony was important to the government's theory because they said that his flirtatiousness was part of his plan to groom inmates, to get them to drop their defenses and break down professional barriers. And why is that not admissible under Rule 404B? That evidence came in. Our evidence was excluded. As evidence of plan, of evidence of planning, intent. The court did admit it under Rule 404B and did not reach the question of whether it was inextricably intertwined. But our position is that the contrary, the contradictory defense evidence that he was not flirtatious was never heard by the jury. As I understand it, you wanted to call a number of witnesses who would say, I worked with Mr. Klein and I never saw any evidence that he engaged in such behavior. Correct. So essentially the mirror evidence to what the government was allowed to prove. Why is that not the same thing as saying, I've ridden with Ms. Daly on 12 different occasions and I've never seen her run a stop sign. But Ms. Daly is charged with running a stop sign on another occasion. Because the government opened the door to how Mr. Klein interacted with inmates on a regular basis. Under Rule 404B. So if the government had been allowed to present evidence that Ms. Daly regularly runs lights because it's relevant to my intent, then I should have been allowed to, you know, offer my husband's testimony who says, you know. She's a very careful driver. Yes, she would never. And it's not character evidence because it's contradictory. It goes to intent in this case because that's how the government used it. The government also argued that it was inextricably intertwined with the allegations of abuse because it was in the government's view doing this, being flirtatious and friendly, was getting them to drop their defenses. And so we were entitled to show that he wasn't that way. We disagreed. Why isn't that relevant properly, evidence relevant and admissible as to grooming potential victims? It was admissible and the jury heard it, but they did not hear our proof that he wasn't. We believed that those witnesses were wrong, lying, mistaken, misperceiving. There was only one staff witness who testified to that. And we weren't allowed to bring in a staff witness who would have said that Mr. Klein was always professional whenever she saw him. And I think this goes not just to rebuttal, but also to our defense of implausibility. Because our defense was that there were all of these described interactions that would have raised red flags. Mr. Klein was allegedly ducking into closets, you know, in order to perform sex acts, but nobody noticed him following an inmate into a closet in an environment where they are regularly and repeatedly trained that that's inappropriate conduct. And so there's testimony that you're never alone at Coffee Creek, but many, many inmates claimed that they were mysteriously alone with him. That's not entirely true, is it? I thought there were times when if there were two nurses assigned to the medical unit, one might be off in another pod or carrying a lab sample someplace. That's right. It was these very rare select instances that staff witnesses said they would try to make less amounts of time. And so if somebody had been like Mr. Klein had been over this period of months repeatedly, there were 32 claimed sex acts that were brought into that were noticed. And over this short period of months for him to be alone that many times and nobody ever walked in, you know, there were brazen allegations where there was a nurse right outside of the room and he was engaged in something, according to these inmates. I think that the defense evidence that they didn't notice anything was not only rebuttal to this grooming, but it was also direct evidence of our implausibility defense. Is your theory then that some of the other correctional officers or medical clinic staff engaged in a cover a conspiracy to cover up Mr. Klein's activities? Is that is that what you were going to argue based on that evidence? 100 percent not that these were all highly trained professionals who were on alert. Their training made them look for whether people were trying to be alone, look for whether people were alone in a room, whether there was any unprofessional interactions between Mr. Klein and inmates. If they observed anything, they had an obligation to report correct behavior. And I see that I'm into my. You want to reserve? I do. All right. You got. Thank you.  Good morning. May it please the court. Jason Lee for the United States. Over the course of a two and a half week trial, the jury heard 17 women described coming to a medical unit at Coffee Creek seeking medical treatment and care and instead being sexually assaulted and raped by Tony Klein. On appeal, he challenges a variety of procedural and evidentiary rulings, but each of those rulings is subject to a very deferential standard of review by this court, and each ruling should be affirmed. I'd like to start with the first ruling that was described by my friend on the other side, the exclusion of testimony by Beaver Cameron by Beaver about statements made by Ms. Basler. Uh, Judge Tallman, I think you honed in on the main question here, which was there is no linkage between these comments that were excluded. They were, it was a discussion in a medical infirmary one-on-one between Basler and Basler, that that is somehow relevant to the other accounts of sexual assault and rape by the other 17 witnesses. Absent that linkage, it is irrelevant. And I want to emphasize at the outset, defense counsel had many ways either to get in evidence about Basler or to establish a connection between the two. Defense counsel themselves could have called Basler as a witness. They didn't. They also could have cross-examined the 17 witnesses about whether or not they had had any conversations with Basler, whether or not Basler had ever tried to recruit them into some conspiracy to fabricate allegations against Klein, or whether or not they had any discussions about, um, along those lines, any, any efforts of recruitment. So the only, the only evidence that the defense had was this conversation between Basler when she, with Beaver, when she attempted to recruit Beaver and Beaver would have testified. She tried and I, I said no. That was the testimony that was excluded. And that was it. There was no other witness that they could point to who could say, I had a similar conversation with Basler or somebody else who was trying to organize a conspiracy here to frame Klein. On cross-examination, they did ask two adult victims. They asked two victims whether or not they'd had conversations with Basler. That was adult victim number two and adult victim number 11. Both of them denied having any discussions with Basler or talking about Basler about fabricating, um, allegations against Klein. Now, for the other 15 witnesses, defense counsel could have asked them, hey, did you have similar conversations with Klein? Did she try to recruit you? That would, if they had said yes, that would have been evidence that defense counsel could have relied upon in their closing argument. That would have then provided a linkage that the district court could have relied on in admitting the evidence against, or admitting the testimony about Basler's statements. But there was no linkage. The only two victims who were asked about it denied having any conversation along those lines. And absent some linkage, this testimony that was excluded is simply irrelevant. Even if it had some marginal value, evidentiary value, it was still properly excluded under Rule 403. It's not an abuse of discretion either way. Because even if there's some probative value to one-on-one conversation between Basler and Basler, there still would have been substantially, there would have been undue prejudice to the government that would have substantially outweighed that minimal probative value because it would have invited the jurors to potentially reach a verdict based on highly speculative evidence under this Court's decision in Espinosa-Baza that's not an abuse of discretion. Turning to the second issue, unless the Court has any further questions about that ruling by the district court. Oh, the one, I apologize. The one other thing I wanted to mention was admission or exclusion of Basler's statements to, exclusion of Basler's statements to Beaver that would have been harmless in any event. If the Court reads over the actual testimony at the Rule 104 hearing, Basler is incredibly hard to understand. Every person, defense counsel, government counsel, even the district court itself had a hard time pinning down Basler about what she was saying, what statement she was talking about, what conversation she was referring to, and who was speaking. It's highly unlikely that that would have moved the needle with the jury, especially when they heard substantial other evidence as to the truthfulness and veracity of the testifying witnesses. Additionally, if you look back at that hearing, both counsel, government counsel and defense counsel were primarily concerned on whether or not AV-15 statements were going to come in because AV-15 had made some comments to Basler. This is a separate conversation in the day room of the jail, and both counsel were highly focused on whether or not AV-15 statements were going to get in. The district court admitted it, and defense counsel even referenced AV-15 statements during her closing. But, of course, that testimony, it makes sense why government counsel and defense counsel were focused on that testimony, because AV-15 was a testifying witness. Statements by her saying she was going to fabricate allegations against Klein, that would have directly undercut her recounting the multiple times when she was forced by Klein to engage in oral sex. So those statements from AV-15 came in. It's unlikely that Basler's statements would have moved the needle, and any linkage between Basler and the other adult victims, that could have been inquired on cross-examination by defense counsel. So unless there are any questions on that issue, I'm happy to talk about the medical staff's testimony that was excluded on direct examination. This was whether or not they personally had witnessed Klein acting flirtatiously on any of the times when they were on duty with him. I just want to make this clear. That testimony, even though it was excluded on direct examination, it came in on cross-examination. There were four medical staff personnel that defense counsel was able to cross-examine, and those four medical staff personnel said that when they were on duty with him, they never witnessed any inappropriate conduct between Klein and the victims in this case. There were also two security staff members who testified on cross-examination that they didn't see any inappropriate conduct between Klein and any of the testifying victims. So you had testimony on cross by six people, six government witnesses, and the idea that this one additional defense witness was not able to testify to basically the same thing on direct examination, that merely would have been cumulative. Again, it would have been harmless in any event. We do believe that it fails on its merits. There was no abusive discretion, either under 404 in excluding this testimony, and I'm happy to draw this out. So there had been discussion, testimony by government witnesses, to the fact that they observed Klein acting flirtatiously at times with other victims, other people in the jail. The defense testimony they sought to elicit, there was no conflict between those two, and Klein basically admits that in the reply leaf. It's not on this particular date, government witness says, I saw Klein acting flirtatiously. No, someone else in the room says, I didn't see it. There's no conflict. So without any conflict, this is not impeachment evidence. The only argument then is Klein must not, as a general matter, have acted flirtatiously because I, medical staff personnel, never saw him acting so. That is classic propensity evidence, and the basis on which someone could infer, reach that conclusion, hey, he must not have acted in this way, as Judge Tolman noted, that rationale is squarely foreclosed by this Court's decision in, I'm blanking, I apologize. Let me pull this up. It's Herzog, sorry. Herzog holds that you cannot establish lack, you cannot establish innocence by showing a lack of criminality in another circumstance. Under that same rationale, Klein cannot ask the jury to infer that he didn't act flirtatiously on this circumstance because I didn't see him act flirtatiously on a separate circumstance. Now, the basis on which the government's evidence was elicited, as Judge Tolman noted, was not propensity evidence. This was evidence as to willfulness, which is a count that the government bore the burden of proof on. This was evidence of his intent, evidence of his planning, testimony by a cumulative witness as to times when she personally didn't witness Klein acting flirtatiously that would not have undercut the evidence of intent, of planning, of motive that the government witnesses described. There are, I'm happy to, there are, I will say for both of these issues, there are constitutional arguments raised. I'm happy to talk about any of the constitutional arguments about his right to present a defense. The main one I wanted to mention is with regard to Basler's testimony, that is clearly reviewed by this Court under a plain error standard. It is not a de novo standard. In Klein's reply brief, they suggest that this was raised in the district court. It was exhausted, and for that reason, there should be de novo review. But if you look at the citation, the specific district court document that they're citing, they don't discuss the constitutional right to present a defense. The constitutional right to present a defense requires application of the Miller factors, and that document that they cite as saying we raise this below, that document doesn't even discuss or apply the Miller factors. There is no way the district court could have inferred that this was an argument that they were raising, and so plain error applies to that constitutional right to present a defense. Regardless whether or not plain error applies or de novo review applies, it fails. Klein ignores four of the five Miller factors, so under a plain error review or de novo review, that constitutional challenge fails. There is a constitutional right to present a defense argument made with regard to the medical staff personnel testimony that was excluded. That's not addressed at all in either the opening brief or the reply brief, so it's  What about the Davis issue that the defense raises with regard to any witnesses who may have been on probation or parole supervision at the time? Yes. My friend on the other side presents this as support for the proposition that this evidence with regard to probationary status should be per se relevant. The theory is because a person on probation, you know, could be vulnerable to pressure by the government, you know, it's per se, it's de facto relevant. That does not hold water. If you look at Justice Stewart's concurrence, he says quite specifically, let me read the what Justice Stewart says about the courts holding in Davis. He says, this Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions. So Justice Stewart's making clear that the opinion in Davis does not adopt a per se rule. That is the same reading that this Court has adopted with regard to Davis that's in the Beardsley amended opinion, noting that there are specific reasons under the facts of that case why that key, that government key witness, his probationary status was relevant. There were fact-specific reasons for that. That's supported by this Court's decision in Kamich, which is also discussed in our response to the 28J letter, where this Court suggested that evidence regarding probationary status could be relevant where the witness's vulnerable status as a pro-prosecution bias. Here, there's no suggestion why the witness's probationary status would render them particularly vulnerable to a pro-prosecution bias. To the contrary, as the District Court explained in its ruling, here, the risk of any bias was really remote. What you had was pending charges or probation status with law enforcement agencies or with courts in other jurisdictions and were not related to the case, either the prosecuting authorities here or anything with regard to the facts of this case. And I take it he did allow the defense to cross-examine to the extent that each witness was asked whether or not they had been promised any benefit or expected or had asked for any special favors in connection with their testimony in this case. That's correct, Your Honor. That was a line of questioning that the District Court specifically permitted. And one other point regarding that line of questioning that was permitted, Defense Counsel didn't actually take the District Court up on that offer. They never once asked any of the witnesses whether or not they subjectively expected or hoped for a benefit as a result of testifying for the government. But the one other point I wanted to make is the District Court made clear that it was taking a very broad view of what a benefit could be. So are you saying they never asked any of the witnesses, do you expect to receive a benefit? And the District Court had ruled before that if the answer was yes, then it would permit additional inquiry into what it was that they were expecting to receive. That's correct, Your Honor. The District Court said as a threshold matter for relevance, this is a question that you should ask if you want to get into these areas of cross-examination. And if the answer is yes, there's a graduated set of inquiries, then you can get into. And they never asked the foundational question? That's correct. And as I mentioned, the District Court, in terms of what would have qualified as a benefit, the District Court understood that very broadly. If you look at ER 2623, the District Court describes different benefits that would, under that situation in which a witness would have to answer yes, a benefit could be monetary, a benefit could be receipt of immunity, it could be not getting deported. It also could be, as was the case in Davis, avoiding suspicion. If any of the witnesses believed that as a result of testifying for the government, they might avoid suspicion for some other crime, as was the case in Davis, that would have qualified also. So it wasn't an abuse of discretion given the reasonable limits that were put on cross-examination. Those limits are entirely consistent with this Court's cases in Larson, in Shardian, and in Bryan. Those are all cited in our brief. All of those cases focus on the risk of bias by a government witness as a result of some benefit that they might obtain, typically a sentence reduction. And so the District Court's rulings, it's correct as a matter of de novo review, but it's certainly not an abuse of discretion. The only other issue, unless the Court has any questions about any of that, the only other issue that's been raised on appeal is the denial of Klein's multiple requests for a continuance. There are only three main points I'd like to raise with regard to this. First, I'd like to point out that there are five considerations, five factors, that this Court needs to weigh in determining whether or not a denial of a continuance constitutes an abuse of discretion. And Klein doesn't argue that those five factors are satisfied with regard to any of the six denials of continuances that are raised on appeal. Klein kind of argues them en masse with regard to all of the denials of continuances. I think the inability to show that a particular ruling, any of those five factors are satisfied, that really undercuts his ability to show an abuse of discretion. And with regard to the two-day pretrial request or the midtrial request involving the 300 to 400 documents, I take it this was Jenks material that the government disclosed to the defense prior to the witness testifying on direct examination? It was mostly evidence that the government had learned as a result of witness prep sessions that had either taken place the night before or the day before. And when government counsel learned something new, they did provide those interview reports to defense counsel. Which was in advance of the witness actually testifying. Correct. I think the rulings that Klein focuses most specifically on are the second and third rulings. This was done in March 2023 and then May 2023. Klein characterizes these rulings as one, you know, you brought this too early. And then the other one, you brought this too late. That's simply not supported by the district court's ruling. The district court denies both of those continuance requests for the same reason. Essentially, inconvenience and prejudice. It notes that in the second continuance request, you know, there was significant inconvenience to the witnesses. And in the third request, there was still inconvenience to the witnesses, but also inconvenience to the court. It already sent out over 300 jury questionnaires. A hundred of them had been processed by court staff. So it was the same basis, inconvenience. It wasn't too early, too late. With regard to prejudice, it was the same basis. None of the areas of inquiry that defense counsel said they wanted to investigate were likely to provide evidence that was either relevant or admissible. So it's not a too early, too late situation. The final point on continuances I wanted to raise is Klein in his reply brief suggests that all he needs to show with regard to prejudice, which is the most important factor here, is that it's possibly or potentially or plausibly relevant to the jury's verdict. That is not consistent with this court's case law. If you look at the Mayha case, which is actually the case Klein relies on, look at footnote 11. Footnote 11 specifically says, when we're talking about a continuance to obtain additional discovery, there the defendant must show actual and substantial prejudice, and that requires a different result by the jury. And here, there's no area of investigation, or Klein identifies no area of investigation where they would have obtained new evidence that would have led the jury to reach a different verdict on any of the 17, for any of the 11, or sorry, for any of the convictions at issue here. So unless the court has any... That was where the district court basically described the request as a fishing expedition. I think all but putting it in that term, yes. He didn't use the term fishing. That's my term. I think so, Your Honor. But that is essentially how I believe the district court was viewing the continuance request. And especially because Klein didn't say, I need a three-month continuance. I need a four-month continuance. The district court understood Klein to be asking for, quote, a substantial continuance. In the absence of saying, you know, this is how long I need. These are the specific areas of inquiry. This is what I think I'm going to get. There was no abuse of discretion in any of the denials of the request for a continuance. So... You want to wrap up? This court should affirm. Thank you. Very well. Thank you, counsel. Ms. Staley, could you address the cross-examination issue with regard to the fact that the court laid out the protocol you were to follow, but for some reason, trial counsel didn't follow it? Never invoked it. Yes, Your Honor. And I think that's correct as to the pending charges and supervision issue, but not correct as to the exclusion of cooperation. The exclusion of cooperation was broader, and the court said that that could not be brought in. We did an offer of proof as to the complainant, and the court concluded that none of what she said would allow cross-examination on that. This was a witness who was cooperating, what, with a different... With the federal government. But a different agency. The DEA. The DEA on cases that were unrelated to Mr. Klein. Cases unrelated to Mr. Klein. There was another one who was working with... A local law enforcement agency. A local sheriff's office or something. Correct. And the one who provided an offer of proof specifically said that if she was deemed to have provided false testimony, then the benefits of her cooperation agreement would likely go away. And notably, this is a person who had provided a civil deposition and had received a civil payout. And so if she had been willing to testify at Mr. Klein's trial that those claims were false, she would have lost her cooperation agreement. But if the defense counsel never asked the foundational question, then why are we even... That's the point that I'm saying. As to AV1, we said, we want to make an offer of proof to get this cross-examination in, and the district court said, I've heard it, you may not. So that foundational question was not required. That issue was fully preserved. But we don't know what the witness would have said had the question been presented. We do, because we have the offer of proof. We have her full testimony. We know what she would have said. And what would she have said? She would have said that she would have... She explained the benefits she was getting, which was money and immunity from prosecution for significant drug charges, drug and gun charges. And she said that she would likely lose those benefits if she were deemed to have testified falsely. Okay, and these were benefits from charges that were pending against her somewhere else? I do not know where the charges were pending. No, I do not know where these acts occurred. She did not have any pending charges. She had avoided all charges for dealer-quantity fentanyl guns that she had while cooperating. So she hadn't ever been held accountable for that conduct because of her cooperation. And instead, she was getting money. But the jury didn't know that she had that incentive to conform her testimony with the deposition that she had previously given. All right, I understand. Yeah, and so the pending charges, I don't think we have to ask the question the way the court told us to preserve that issue. We told the court what we wanted to get in, and it was wrong when it excluded it. It's also, I just wanted to say on that issue, we're not claiming per se that this type of information comes in. We're saying it came in in this case. These complainants were savvy. They understood that being a federal victim was likely to get them special privileges, and they asked for those special privileges. And so we're not making a leap of logic to say that having pending charges was something that would give them an incentive to curry favor with the federal government. Are you saying that the district court would not have allowed you to say, isn't it true that if you're determined to have testified falsely in this case, that this would impact your cooperation agreement in other jurisdictions? That was not allowed. Okay. In fact, there was a question about it. Do you have any cooperation agreement? And that was objected to and sustained. On the demeanor testimony, I just wanted, the government said that this testimony came in and that this, what we proffered, would have been cumulative. It did not come in. We were allowed cross-examination of several witnesses who agreed that they hadn't said anything, but that context was different. It was more narrow. It was limited by the scope of direct examination, and it was solely for impeachment. What we were precluded from bringing in was important because every staff witness who didn't see anything suspicious made our defense stronger. This was a close case. These complainants certainly had reasons to lie, and we weren't allowed to show that they were lying. I'm happy to keep going, but I see that I'm out of time. Well, we only have one case today, so, I mean, we're not under the time pressure. If there's some points you want to make, I'm not going to cut you off. I never had an offer like that. Within reason, counsel. But yes, but I will, you know, I don't, this is an important case. I don't mean to cut you off. I mean, I think our first two issues, just this exclusion of defense evidence is so important in a closed case, and so a few of the points on the first issue I did want to touch on. You know, there's no requirement in any case law that I can see where they say you have to ask these people whether they lied in order for you to bring in circumstantial evidence that they lied from another witness. Again, not hearsay. Relevant because there's these inferences that you can reasonably draw, and I did just want to cite Vallejo here. The defense only has to show reasonable doubt. That's the level of inference that we're looking for, and the accused should be afforded every opportunity to create that doubt. We were not. The government's perception that this witness was not persuasive is not how this court should rule on that issue because that should have been for the jury. I can tell you the defense team found her very persuasive. There was also a struggle, a rush to find these witnesses because as the affidavit from defense investigator Stephen Wilson says, they hadn't found all of the witnesses that they wanted to interview yet. That's why they needed more time. They had only interviewed a third of the witnesses. You had 16 months from the time that the case was indicted. As I understand it, the Oregon State Police had thoroughly investigated the charges and presented them to the Washington County District Attorney who apparently declined prosecution. Correct. So you had, and you got the state investigative material, so you'd known who the victims were for quite some time, had you not? We had received the initial batch of discovery in a usable format on June 29th, 2022, so approximately 13 months. From the United States or from Washington County? From the United States government. We never got all of the Washington County records that we were looking for. I thought you made a Public Records Disclosure Act request to the county. There were, we received, I don't know what we received in discovery about Washington County. I do know that there were public records requests to Washington County that were discussed in the motions to continue and the affidavits that were not responded to. I thought there was a representation in the briefing, maybe it was the government's brief, that there was a, you had the full investigative file from OSP. What I will say is that the government's response to the motion to continue conflated what the civil case attorneys had received with what there was a government offer of proof pre-indictment to the defense and then discovery. And so the defense began preparing this case when they received that discovery. And that discovery wasn't usable until June 29th, 2022. And if you read the affidavits, you can see how the defense developed from that date where they review the discovery and then they start sending out public records requests because they're starting to formulate their defense at that point. So there's, between October and March, they're all, all of the records requests are listed in the affidavit of Arie Steinberg Lake. And so they had to review the discovery before knowing what their defense was, before knowing what records. And as records came in, they reviewed those and sent out more records and eventually subpoenas. Did you obtain any discovery regarding the related state civil litigation? Some of which I understand had been settled prior to the federal criminal trial. I don't know the answer to that. I will be almost done. I just, I think the only other thing that I wanted to say here is that this is a case about tipping points. There was a point where the government's strength in numbers claim persuaded the jury. We weren't allowed to develop our strength in numbers defense. And I think this case should be reversed. All right. Thank you, counsel. Thanks to both of you for your briefing and argument. Both excellent advocates, both excellent briefing in this important case. This matter is submitted and we will return tomorrow. Thank you. All rise.
judges: TALLMAN, OWENS, VANDYKE